**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**David J. ERBES, Respondent.**

**No. 99–1573.**

Supreme Court of Iowa.

Jan. 20, 2000.

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

Roger J. Kuhle, West Des Moines, for respondent.

Considered by McGIVERIN, C.J., CARTER, NEUMAN, and CADY, JJ., and HARRIS,* S.J.

NEUMAN, Justice.

The charges in this lawyer disciplinary action are sadly familiar: probate delinquencies compounded by failure to heed notices from the clerk of court and disciplinary authorities. Yet the record also reveals a refreshingly proactive response by attorney David Erbes as he strives to overcome the debilitative effects of depression. The grievance commission urges us to impose a sanction no more severe than a public reprimand, despite the fact that this is not Erbes' first time before this court. Given the strong record of Erbes' recovery, and the fact that the matters before us predate his most recent reprimand, we concur in the commission's recommendation.

The facts are not disputed. David Erbes has practiced law in Des Moines since 1985. His practice consists primarily

---

* Senior Judge assigned by order pursuant to Iowa Code section 602.9206 (1999).

of family law, probate, and real estate transactions. By order dated September 14, 1995, this court reprimanded Erbes for failing to file a required compliance report in connection with telephone book advertising, in violation of DR 2–105(A)(4) of the Iowa Code of Professional Responsibility for Lawyers. We subsequently issued a public reprimand for Erbes' neglect of a client's dissolution modification proceeding, in violation of DR 6–101(A)(3), and failure to respond to related inquiries from the Board of Professional Ethics and Conduct (Board), a violation of DR 1–102(A)(1)(5) and (6). *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Erbes*, 573 N.W.2d 269, 270 (Iowa 1998).

■ The matter now before us concerns Erbes' failure to file required annual or final reports in one estate, one trust and three guardianships in which Erbes served as attorney for the fiduciaries. The reports were due at various times from 1995 through 1998. Delinquency notices had been issued by the clerk of court in accordance with Iowa Code section 633.32 (1997) and Iowa Rule of Probate Procedure 5. Erbes failed to respond within the required sixty days. *See* Iowa Code § 633.32(1). In each case the Board charged Erbes with neglect of a client's legal matter, in violation of DR 6–101(A)(3). It also charged that Erbes failed to respond to the Board's investigation of these probate delinquencies once the matters were referred to it in accordance with Iowa Rule of Probate Procedure 5(c)-(e). This lack of cooperation, the Board charged, violates DR 1–102(A)(5) and (6).

At the hearing before a division of the grievance commission, Erbes readily conceded the foregoing violations. He also offered proof, however, that the estate and one of the guardianships have now been closed; all other matters are current. This positive turn of events was prompted, in large part, by a successful course of counseling and drug therapy begun by Erbes just shortly after publication of *Board v. Erbes*.

Erbes began counseling with Phyllis Hansel, a clinical psychologist, in February 1998. She testified that Erbes at first voiced concerns not uncommon among busy professionals—problems with "stress" and feeling overwhelmed by too much to do and insufficient time to do it. He sought strategies to organize his life more effectively. As their counseling sessions progressed, however, Hansel recognized Erbes' problems were more deeply seeded. He evidenced a level of inaction and inability to perform effectively that was entirely out of proportion to the tasks at hand. Compounding this inertia were problems with focus and concentration. By nature a perfectionist, Erbes' inability to meet his own standards of performance disturbed him to the point of emotional paralysis.

By July 1998, Hansel was convinced that Erbes suffered from depression of biochemical origin. An antidepressant medication was prescribed. Once the proper dosage level was achieved, the results were quite remarkable. Erbes embarked on an office remodeling project needed since the flood of 1993. He hired extra help to sort files. He met with probate judge Ruth Klotz to candidly discuss his situation and seek her counsel. At her suggestion, he hired a young lawyer to organize and take action on his probate files. The same lawyer helped Erbes buy a much-needed computer and master the necessary software to keep track of deadlines. Erbes transformed an office in which it was once difficult to find the desk into one in which the files are in the file cabinet and mail is opened and answered the day it arrives. Erbes' wife reported being "shocked" by the transformation when she first witnessed it, and his secretary now chides Erbes' office mates about not keeping up with his high standards.

By the time of hearing in this matter, Erbes had met with his psychologist forty-three times. He continues in therapy with

her. Hansel reported that Erbes' mental status is greatly improved. He has demonstrated substantial and sustained progress in problem-solving and initiating action. A "floor" on his depressed mood has been reached. She testified that, given this progress, Erbes' reliance on medication will soon be reduced and eventually eliminated.

■■ The question is what sanction to impose for the ethical breaches identified by the Board and conceded by Erbes. Familiar principles guide our answer. It is no defense to a disciplinary complaint that a lawyer suffers personal or emotional problems. *Committee on Prof'l Ethics & Conduct v. Paulos*, 410 N.W.2d 260, 262 (Iowa 1987); *Committee on Prof'l Ethics & Conduct v. Hoffman*, 402 N.W.2d 449, 451 (Iowa 1987). Our ethical canons "are not primarily intended to mete out abstract justice to wayward attorneys, but rather are chiefly intended to provide protection to the public." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Scieszinski*, 599 N.W.2d 472, 474 (Iowa 1999). Conduct that might ordinarily result in a public reprimand may justify a sterner penalty when there has been a prior reprimand. *Committee on Prof'l Ethics & Conduct v. Leed*, 477 N.W.2d 390, 392 (Iowa 1991). Harm to the client is also a factor bearing on the severity of any sanction imposed. *See, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Freeman*, 603 N.W.2d 600, 601 (Iowa 1999) (suspension compelled when lawyer neglect resulted in expiration of statute of limitations); *Iowa Supreme Court Bd. of Prof'l Ethics & Conduct v. Fleming*, 602 N.W.2d 340, 342 (Iowa 1999) (six-month suspension for neglect of probate matter resulting in financial loss to beneficiary).

On balance, we are convinced that application of these principles militates in Erbes' favor. We perceive no attempt by Erbes or his able counsel to excuse or minimize the neglectful conduct that brought Erbes before the Board. Instead—at long last—Erbes has faced his dilatory behavior head-on. The record reveals substantial improvement, rather than impairment, in Erbes' ability to effectively serve his clients. Erbes' delinquencies, though inexcusable, came to light via routine notices rather than client complaints or losses. Moreover, the matters about which we are concerned antedate Erbes' prior reprimand.

■■ In addition to protecting the public and deterring other lawyers from unethical conduct, we are obliged to tailor disciplinary sanctions to the specific facts and circumstances of each individual case. *Committee on Prof'l Ethics & Conduct v. Rogers*, 313 N.W.2d 535, 537 (Iowa 1981). Here, the commission felt strongly that any sanction more harsh than a further reprimand would be unduly punitive. It reasoned that Erbes has successfully addressed the emotional problems at the root of his delinquencies, has learned by his experience, and currently poses no threat to the public. The commission's recommendation, though not binding on us, is entitled to our respectful consideration. *Committee on Prof'l Ethics & Conduct v. O'Callaghan*, 436 N.W.2d 51, 51 (Iowa 1989). Based on our de novo review of the record, we find no reason to question the soundness of the commission's view.

We hereby reprimand Erbes for neglecting probate deadlines and failing in his duty to cooperate with colleagues investigating those delinquencies. Mindful of the strides achieved by Erbes in gaining control over his law practice and personal life, we trust that he will continue to conduct himself in a manner befitting the confidence reposed in him by this decision.

**LAWYER REPRIMANDED.**