# IN THE SUPREME COURT OF IOWA

No. 129 / 07-0823

Filed March 14, 2008

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

Complainant,

vs.

**JAMES WILLIAM RAMEY,**

Respondent.

On review of the report of the Grievance Commission.

The Iowa Supreme Court Grievance Commission recommends a revocation of Ramey's license. A public reprimand is imposed. **RESPONDENT REPRIMANDED.**

Charles L. Harrington and Wendell J. Harms, Des Moines, for complainant.

No appearance for respondent.

**HECHT, Justice.**

The Iowa Supreme Court Grievance Commission has recommended revocation of attorney James Ramey's license to practice law in Iowa for violations of the Iowa Code of Professional Responsibility for Lawyers.[1] Although we agree with the commission's finding that Ramey's conduct violated several ethical rules, we conclude the appropriate sanction in this case is a public reprimand.

### I.       Factual and Procedural Background.

This case represents the fourth charge of ethics violations against James W. Ramey in the past twenty years.  In 1988 we suspended Ramey for six months for failing to timely file tax returns in three years, for making a false statement on a client security questionnaire that one of those returns had been filed, and for failing to respond to the inquiries of the commission.  *See Comm. on Prof'l Ethics & Conduct v. Ramey*, 424 N.W.2d 435 (Iowa 1988) (*Ramey I*).  We also suspended Ramey's license for three months in 1994 for making a false statement to the court and failing to disclose exculpatory evidence during the prosecution of a criminal case. *See Comm. on Prof'l Ethics & Conduct v. Ramey*, 512 N.W.2d 569 (Iowa 1994) (*Ramey II*).

We most recently suspended Ramey's license in January 2002.  *Iowa Supreme Ct. Disciplinary Bd. of Prof'l Ethics & Conduct v. Ramey*, 639 N.W.2d 243 (Iowa 2002) (*Ramey III*).  That case stemmed from a complaint filed by Ramey's former client, Ms. Edna Downard.  In July 2000 Ms. Downard hired Ramey to represent her and her sisters regarding their brother's estate, and gave him a $1000 retainer.  *Id.* at 244.  Downard had one

---

[1]The conduct alleged in this case against Ramey occurred in 2001. Accordingly, the violations found by the commission are based on the disciplinary rules of the Code of Professional Responsibility in force in 2001.

additional conversation with Ramey, but thereafter never heard from Ramey again. Ramey did not return the $1000 retainer and did not provide an accounting for the services, if any, he provided. *Id.* We found Ramey's conduct violated numerous ethical rules and suspended his license for three years. *Id.* at 246. He has not sought reinstatement during his present suspension.[2]

The two complaints against Ramey in this case were originally filed with the grievance commission in May 2003, but arise from matters undertaken by him in the summer of 2000 when he committed the ethical violations in connection with the Downard case. Pursuant to Iowa Court Rule 34.5, the Iowa Supreme Court Attorney Disciplinary Board notified Ramey of the first of these two complaints in June 2001. Ramey did not respond to the notification. The board could not locate Ramey to issue a rule 34.5 notification for the second complaint, but it subsequently filed a two-count complaint with the grievance commission which listed both charges. Because the board was unable to personally serve Ramey with notice of the complaint filed with the grievance commission, notice was served on an assistant clerk of the Iowa Supreme Court on January 30, 2007. *See* Iowa Ct. R. 36.6(3) ("If service cannot be obtained pursuant to rule 36.6(2) [providing for personal service], the clerk of the grievance commission may serve notice of the complaint on the clerk of the supreme court who is appointed to receive service on behalf of lawyers subject to Iowa's disciplinary authority. . . . Service on the clerk of the supreme court is deemed to be completed service of the notice on the respondent."). Ramey did not file an answer to the complaint and failed to appear at the

---

[2]As a consequence of Ramey's failure to demonstrate compliance with continuing legal education requirements, his license to practice law has been suspended since November 10, 2000.

disciplinary hearing in April 2007, at which the commission received the board's uncontroverted evidence. The following statement of facts is based upon the complaint and the testimony of the board's witnesses at the disciplinary hearing.

**A.      Haberthur Dissolution.** In 1998, Randy Haberthur, who had recently separated from his wife, asked Ramey to calculate the child support he should pay his wife during the separation. Ramey completed the work without incident. In June 2000, Haberthur paid Ramey $430 as a retainer for representing Haberthur in a dissolution of marriage action. In December of that year, Ramey informed Haberthur that the divorce had been completed, and provided him with a dissolution decree purportedly entered on December 20, 2000. The decree bore a case number and purported to have been filed in the Polk County District Court. Ramey did not disclose to Haberthur that his license had been suspended in November 2000 for failure to comply with continuing legal education requirements.

Haberthur became suspicious of the decree's validity. When he went to the clerk's office to inquire, Haberthur learned no petition for dissolution had ever been filed, much less a decree. Haberthur retained other counsel and his dissolution was completed in July 2001. Ramey did not return the $430 retainer to Haberthur.

**B.      Hethershaw Real Estate Matter.** Ramey was consulted in July 2000 by Charles Hethershaw about the marketability of his title to certain Alabama real estate inherited by Hethershaw. Hethershaw gave Ramey a file containing documents including Hethershaw's grandfather's 1899 deed to the land.

About one month after delivering the file to Ramey, Hethershaw attempted to contact Ramey to inquire about the status of the matter.

Ramey did not respond to Hethershaw's calls or correspondence requesting information about the matter. After approximately two to three months without communication from Ramey despite repeated inquiries, Hethershaw drove to Ramey's office and found it closed and locked. Hethershaw made no payment to Ramey, and had no further communication with him. The board subsequently retrieved at least part of Hethershaw's file from Ramey's vacated law office in Des Moines.[3] Ramey did not notify Hethershaw that his license to practice law was suspended in November 2000.

**C. Commission's Findings.** Ramey's failure to respond to the complaints filed with the commission resulted in an admission of the allegations. Iowa Ct. R. 36.7. Based on the uncontroverted evidence at the hearing, the commission found Ramey violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation), DR 1–102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice and shall respond to the board's notices), DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the fitness to practice law), DR 6–101(A)(3) (a lawyer shall not neglect a client's legal matter), DR 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of the client), DR 7–101(A)(2) (a lawyer shall not intentionally fail to carry out a contract of employment), DR 7–101(A)(3) (a lawyer shall not intentionally damage a client during the course of the professional relationship), DR 9–102(B)(3) (a lawyer shall maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them), and DR 9–102(B)(4) (a lawyer shall promptly pay or deliver to the client as requested by a client the funds,

---

[3]The deed was not among the papers retrieved from Ramey's abandoned office.

securities, or other properties in the possession of the lawyer which the client is entitled to receive). The board found "nothing in the record to indicate that [Ramey] has acknowledged his mistakes and would practice law as required by the disciplinary rules in the future." Given his history of disciplinary proceedings, the commission recommended that Ramey's license to practice law in the State of Iowa be revoked.

## II. Standard of Review.

When an attorney fails to appeal the commission's recommendation, we review de novo the record made before the commission. Iowa Ct. R. 35.10(1); *Comm. on Prof'l Ethics & Conduct v. Peterson*, 524 N.W.2d 176, 178 (Iowa 1994). While we give respectful consideration to the commission's findings and recommendations, we are not bound by them. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lemanski*, 606 N.W.2d 11, 13 (Iowa 2000). The board must prove misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moorman*, 729 N.W.2d 801, 803 (Iowa 2007).

## III. Findings.

Upon our de novo review, we find the record supports the commission's findings by a convincing preponderance of the evidence and we conclude Ramey violated numerous ethical rules.

**A. Neglect.** DR 6–101(A)(3) states that attorneys shall not neglect clients' legal matters. "The rule requires an attorney to attend to matters entrusted to his care and to do so in a reasonably timely manner." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 730 N.W.2d 202, 205 (Iowa 2007). In abandoning Haberthur's and Hethershaw's cases without communication to the clients, Ramey neglected the interests of his clients, and violated DR 6–101(A)(3). *Iowa Supreme Ct. Att'y Disciplinary Bd. v.*

*Kirlin*, 741 N.W.2d 813, 817 (Iowa 2007) ("Professional neglect involves indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client." (Internal quotation omitted)).

**B.     Intentional Failure to Carry Out Contract of Employment, Failure to Seek the Client's Lawful Objectives, and Intentionally Damaging the Client.** Ramey's intentional abandonment of the Haberthur and Hethershaw cases without communication to either client constituted violations of DR 7–101(A)(1)–(3). *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 818–19 (Iowa 2007).

**C.     Dishonesty, Fraud, Deceit, and Misrepresentation.** DR 1–102(A)(4) prohibits lawyers from "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." Ramey's representation to Haberthur that his divorce was completed and his creation of a counterfeit dissolution decree violated DR 1–102(A)(4). *Comm. on Prof'l Ethics & Conduct v. Wilson*, 290 N.W.2d 17, 23 (Iowa 1980) (forging judge's signature to a divorce decree and deceiving a client are violations of DR 1-102(A)(4)).

**D.     Prejudice to the Administration of Justice; Fitness to Practice Law.** The fraud perpetrated by Ramey on Haberthur was prejudicial to the administration of justice, in violation of DR 1–102(A)(5), because Haberthur was forced to independently uncover Ramey's deception and obtain different counsel to obtain the dissolution. Haberthur's dissolution was delayed over six months as a result of Ramey's deceitful act. Moreover, at the time he presented Haberthur with the forged decree, Ramey had been suspended from the practice of law—information he failed to provide to Haberthur. This conduct also adversely reflects on Ramey's fitness to practice law, a violation of DR 1–102(A)(6).

Additionally, Ramey's failure to complete the Hethershaw matter and return the client's file upon request constitutes a violation of DR 1–102(A)(5) and (6), because Hethershaw was delayed in the realization of his legal objectives. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kennedy*, 684 N.W.2d 256, 260 (Iowa 2004) (failure to initiate appropriate legal proceedings adversely reflects on fitness to practice law and prejudices the administration of justice).

**E.     Failure to Account.**  DR 9–102(B) requires attorneys to:

. . .

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them.

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

Ramey's failure to return Haberthur's retainer or provide an account of services rendered in the dissolution matter constituted a violation of DR 9–102(B)(3) and (4).  Ramey's failure to maintain and return Hethershaw's file when requested resulted in a violation of the same disciplinary rules. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 729 N.W.2d 437, 442 (Iowa 2007).

**F.     Failure to Respond to Board Inquiries.**  Finally, Ramey's failures to respond to the board's inquiries constitute independent violations of DR 1–102(A)(5) and (6). *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kallsen*, 670 N.W.2d 161, 167 (Iowa 2003).

**IV.     Discipline.**

Having found Ramey violated several provisions of the Code of Professional Responsibility in existence at the time of the infractions, we

must consider whether to impose the commission's recommended sanction of revocation. The appropriate sanction in any disciplinary case must be based on the particular facts and circumstances of the case. *Ramey III*, 639 N.W.2d at 245. Ramey's conduct in connection with the Haberthur and Hethershaw matters occurred contemporaneously with the conduct which formed the basis for our conclusion in 2002 that Ramey's license should be suspended with no possibility of reinstatement for three years. When the misconduct forming the basis for a current disciplinary charge antedates or is contemporaneous with conduct for which a previous suspension was issued, we must determine whether we would have imposed a greater suspension in the prior case had we been aware of the information now before the court. *See Moorman*, 729 N.W.2d at 805–06; *Comm. on Prof'l Ethics & Conduct v. Clauss*, 468 N.W.2d 213, 215 (Iowa 1991). Where the attorney's conduct in both cases is "similar and demonstrates the same pattern of conduct," a public reprimand may be more appropriate than additional punishment. *Moorman*, 729 N.W.2d at 806.

Ramey's conduct in this case is similar in nature to that which was alleged against him in *Ramey III*, and appears to be part of a pattern of conduct in which Ramey abandoned his practice without informing clients or returning their files and previously advanced funds. It is unlikely we would have imposed a more severe penalty in *Ramey III* had the Haberthur and Hethershaw complaints and violations been considered. As in *Moorman*, because Ramey's license is presently under suspension and he will be required to satisfy numerous conditions if he should apply for reinstatement, a more severe penalty will not serve to protect the public or deter future misconduct. *Moorman*, 729 N.W.2d at 806; *see Bd. of Prof'l Ethics & Conduct v. Scieszinski*, 599 N.W.2d 472, 474 (Iowa 1999) ("The

canons of ethics are not primarily intended to mete out abstract justice to wayward attorneys, but rather are chiefly intended to provide protection to the public.").

Accordingly, James William Ramey is hereby publicly reprimanded for misconduct in connection with the Haberthur and Hethershaw matters. In addition to the conditions prescribed in *Ramey III*, Ramey shall (1) pay $430 to Haberthur, and (2) return to Hethershaw any of his documents in Ramey's possession prior to filing any application for reinstatement. Costs of this action are assessed to Ramey pursuant to Iowa Court Rule 35.25.

**ATTORNEY REPRIMANDED.**

All justices concur except Appel, J., who takes no part.