**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD, Complainant,**

**v.**

**Ronald M. SOTAK, Respondent.**

**No. 05–1153.**

Supreme Court of Iowa.

Nov. 18, 2005.

Charles L. Harrington and Wendell J. Harms, Des Moines, for complainant.

Ronald M. Sotak, Ames, respondent, pro se.

STREIT, Justice.

The Iowa Supreme Court Board of Professional Ethics and Conduct charged Ronald M. Sotak with numerous violations of the Iowa Code of Professional Responsibility for Lawyers. The Grievance Commission of the Supreme Court of Iowa, upon reviewing a joint stipulation of facts from Sotak and the Board, found Sotak violated the Code and recommended an indefinite suspension of not less than two years. We review this matter pursuant to Iowa Court Rule 35.10 and agree with the Commission's findings and recommended sanction.

## I. Facts and Background

Sotak graduated from Drake University Law School in 1992. Upon graduation, he worked as a prosecutor for the Story County Attorney's office. He then worked briefly as an Assistant Iowa Attorney General. In 1997, he began employment at the Newbrough, Johnston, Brewer, Maddux & Krauth law firm (Newbrough law firm) in Ames. In 2001, he left the Newbrough law firm and joined the law firm of Zarley, McKee, Thomte, Voorhees & Sease (Zarley law firm) in Des Moines. The majority of the matters investigated by the Board pertain to the period surrounding the end of Sotak's employment at the Newbrough law firm and his transition to the Zarley law firm.

The Board filed this complaint with the Grievance Commission in November of 2004. Sotak and the Board signed a joint stipulation on April 29, 2005. Both parties waived the hearing, and agreed to submit the matter to the Commission on the basis of the stipulation, complaint, and corresponding exhibits. The joint stipulation indicated Sotak cooperated with the Board's investigation and had no prior record of ethical violations. The stipulation recommended an indefinite suspension of Sotak's Iowa law license with no possibility of reinstatement for at least two years.

Based on this stipulation, the Grievance Commission found Sotak's conduct violated the Disciplinary Rules designated in the complaint and recommended an indefinite suspension of Sotak's law license with no possibility of reinstatement for at least two years.

## II. Standard of Review

 We review attorney disciplinary proceedings de novo. Iowa Ct. R. 35.10(1). The Board has the burden to prove disciplinary violations by a convincing preponderance of the evidence. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Williams*, 675 N.W.2d 530, 531 (Iowa 2004). We will decide the matter by taking into consideration the factual findings and disciplinary recommendation made by the Commission. *Id.* We may impose a lesser or greater sanction than the discipline recommended by the Grievance Commission. Iowa Ct. R. 35.10(1).

## III. Findings and Ethical Violations

Sotak admitted all of the factual claims and ethical violations made against him by the Board. We find convincing evidence to prove the following:

### A. Ross and Haggard Matter

Sotak undertook representation of Dale Ross and Frank Haggard by filing a lawsuit on their behalf against the State of Iowa and Iowa State University. This lawsuit was dismissed without prejudice for want of prosecution in January of 2001 pursuant to Iowa Rule of Civil Procedure

215.1. Sotak failed to appeal the dismissal and did not tell either client their lawsuit had been dismissed. Sotak then took the case file with him to the Zarley firm without notifying or obtaining consent from either client. The Zarley firm precluded Sotak from further representation of Ross and Haggard, but Sotak did not tell his clients they needed to hire different counsel.

### B. Wheeler Matter

Jon Wheeler retained Sotak to represent him with regard to workers' compensation and product liability claims arising from the death of his wife. Sotak did not file the report of first injury within the time required by Iowa Code section 85.23 (1999). When Wheeler inquired about the status of the case, Sotak falsely stated he had filed "the original notice and petition" with the worker's compensation commissioner and had talked with a judge about the case. Also, even though his employment with the Zarley law firm precluded further representation of Wheeler, Sotak did not tell Wheeler he needed to hire a different attorney.

### C. American Built, Inc. Matter

In February of 2000, Sotak agreed to represent American Built, Inc. in the enforcement and foreclosure of two mechanics' liens. In June of 2000, the property owner's attorney made a written demand that American Built bring suit on its mechanics' liens within thirty days pursuant to Iowa Code section 572.28. Sotak accepted service of these demands and, without American Built's knowledge or consent, gave the property owner a mechanics' lien waiver for part of the disputed labor and materials. Sotak eventually filed American Built's actions to foreclose the mechanics' liens on December 18, 2000, but failed to serve the original notice

on the property owner within ninety days as required by Iowa Rule of Civil Procedure 1.302(5). Sotak filed a dismissal prior to the hearing scheduled to address whether the lawsuit should be dismissed for failure to timely effect service of process. Sotak never told American Built the action had been dismissed; instead he indicated the lawsuit was progressing satisfactorily and settlement negotiations were underway. When Sotak switched to the Zarley law firm he never told American Built it needed to hire a different attorney.

### D. Ellsworth Matter

Sotak agreed to represent Tyan Ellsworth in a personal injury case. Sotak filed the lawsuit, but failed to properly serve the original notice within ninety days as required by Iowa Rule of Civil Procedure 1.302(5). The court dismissed the case for failure to properly effect service of process. Sotak did not tell Ellsworth the case had been dismissed and also failed to appeal the dismissal.

### E. United Fire and Casualty Company Matter

United Fire and Casualty Company retained Newbrough law firm to pursue a subrogation claim. Sotak began representing United Fire in this matter, and filed a lawsuit on its behalf. Months later, without the knowledge or consent of United Fire and Casualty, Sotak dismissed the lawsuit with prejudice. Sotak failed to keep in contact with United Fire and Casualty and did not advise it of his actions on its behalf.

### F. Stroo Matter

Jacqueline Stroo retained Sotak to represent her for a claim pertaining to a car accident. Sotak filed a lawsuit on behalf of Stroo, and then, without the knowledge or

consent of Stroo, settled the lawsuit and dismissed the case with prejudice. Sotak received two checks from the opposing party's insurance company and placed them in Stroo's case file, but he never informed Stroo of their existence. Stroo only discovered the settlement checks when she retrieved her case file.

## IV. Ethical Violations

We find convincing evidence for the following violations:

### A. Neglect

■ Sotak committed professional neglect on numerous occasions. *See* DR 6–101(A)(3) (providing a lawyer shall not neglect a client's legal matter); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kennedy*, 684 N.W.2d 256, 259–60 (Iowa 2004) (defining professional neglect as "indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client"). In the Ross/Haggard matter, the case was dismissed for Sotak's want of prosecution. Even worse, Sotak did not appeal the dismissal and did not inform his clients their case had been dismissed. In the Wheeler matter, Sotak failed to file the report of first injury within the required timeframe. In the American Built and Ellsworth matters he failed to serve opposing parties within the ninety day parameter set forth in Iowa Rule of Civil Procedure 1.302(5). These cases illustrate Sotak's consistent failure to perform his assumed obligations.

### B. Misrepresentation

■ In the Wheeler, American Built, and Ellsworth matters he also made misrepresentations to hide the neglect. Misrepresentation of neglect warrants a more severe sanction. *See Iowa Supreme Ct.*

*Bd. of Prof'l Ethics & Conduct v. Walters,* 646 N.W.2d 111, 114 (Iowa 2002) (holding multiple instances of neglecting client matters, engaging in misrepresentation, failing to notify a client of his suspension from the practice of law, and failing to respond to inquiries from the Iowa Supreme Court Board of Professional Ethics and Conduct warranted eighteen-month suspension). The practice of law simply cannot have people engaged in it who lie to their clients. *Committee on Prof'l Ethics & Conduct v. Horn,* 480 N.W.2d 861, 863 (Iowa 1992). It is our obligation to ensure the citizenry can hire a lawyer that they trust and have reason to trust. *Id.* (delay in pursuing suit to foreclose mechanics' lien, false representations regarding status of foreclosure matter, and failure to cooperate in disciplinary investigation warranted six-month suspension).

### C. Fitness to Practice Law & Prejudice to the Administration of Justice

■ Beyond neglect of a client's legal matter, failing to timely file documents with the court is conduct prejudicial to the administration of justice and is conduct that adversely reflects on the attorney's fitness to practice law. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sherman,* 637 N.W.2d 183, 186–88 (Iowa 2001); DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule); DR 1–102(A)(5) (providing a lawyer shall not engage in conduct prejudicial to the administration of justice); DR 1–102(A)(6) (providing a lawyer shall not engage in any conduct that adversely reflects on the fitness to practice law). Sotak's failure to properly serve opposing parties and meet court deadlines in the Haggard, American Built, and Ellsworth matters constitute such violations.

### D. Withdrawal from Employment

■ Sotak's handling of the case file in the Ross/Haggard, Wheeler, and American Built matters also violated DR 2–110(A)(2) (providing a lawyer shall not withdraw from employment until reasonable steps have been taken to avoid foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules).

### E. Intentional Failure to Seek Clients' Objectives and Prejudice to a Client

■ Sotak violated DR 7–101(A)(1) (providing a lawyer shall not intentionally fail to seek the lawful objectives of a client) and DR 7–101(A)(3) (providing a lawyer shall not intentionally prejudice or damage a client during the course of a professional relationship) when, in the American Built matter, he provided a lien waiver to the opposing party without the consent or knowledge of his client. Similarly, in the United Fire matter he violated the same professional rules when he dismissed a lawsuit without the knowledge or consent of his client. He also violated these rules when he settled and dismissed Jacqueline Stroo's lawsuit without her consent.

### F. Failure to Release Client Funds

■ Sotak violated DR 9–102(B)(1) (providing a lawyer shall promptly notify a client of the receipt of the client's funds) when he did not promptly give a settlement check to his client, Jacqueline Stroo.

### V. Conclusion

■ We must now determine the proper sanction based on Sotak's violations of the Code of Professional Responsibility. There is no standard discipline for a par-

ticular type of attorney misconduct because each case rests on its own particular facts. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ramey*, 639 N.W.2d 243, 245 (Iowa 2002). When deciding on appropriate discipline, "[w]e consider the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue to practice law." *Id.* The following cases provide guidance for our decision.

In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Honken*, 688 N.W.2d 812 (Iowa 2004), we disciplined an attorney for failing to obtain service of process on the defendants in a personal injury lawsuit and then failing to inform his clients that the district court had granted the defendants' motion to dismiss. *Honken*, 688 N.W.2d at 819. The attorney also made multiple misrepresentations to the court, disregarded court orders, neglected client matters, misrepresented the status of matters to his clients, and failed to respond to the Board's inquiries. *Id.* at 820. Noting this was the first disciplinary action taken against the attorney, we suspended his license to practice law for two years. *Id.* at 821–22. In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Moorman*, 683 N.W.2d 549 (Iowa 2004), we disciplined an attorney for failing to file a personal injury case before the statute of limitations had expired, for attempting to limit his liability to his client, and for failing to prosecute five appellate matters. *Moorman*, 683 N.W.2d at 551–53. We decided this conduct warranted a two-year suspension.

### VI. Discipline

■ In conclusion, we agree with the recommendation of the commission. Sotak's misconduct compromised the standards of the legal profession and we be-

lieve a firm sanction is necessary to assure the public that the courts will maintain the ethics of the profession. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Erbes,* 604 N.W.2d 656, 659 (Iowa 2000) ("Our ethical canons are … chiefly intended to provide protection to the public."). We therefore suspend Ronald M. Sotak's license to practice law in the state of Iowa, with no possibility of reinstatement for a period of two years from the date of the filing of this opinion. We assess the costs to respondent as provided in Iowa Court Rule 35.25(1).

**LICENSE SUSPENDED.**