# IN THE SUPREME COURT OF IOWA

No. 45 / 05-1954

Filed April 7, 2006

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

> Complainant,

vs.

**DONNA P. LESYSHEN,**

> Respondent.

_____

On review of the report of the Grievance Commission.

Grievance Commission reports that respondent has committed ethical misconduct and recommends suspension of respondent's license to practice law. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Donna P. Lesyshen, Waterloo, pro se.

**STREIT, Justice.**

An Iowa attorney with a history of ethical problems is here with more ethical violations. The Iowa Supreme Court Attorney Disciplinary Board ("Board") accused Donna Lesyshen of neglecting client matters, failing to respond to inquiries from the Board, mishandling trust account funds, and inadequate withdrawal. The Grievance Commission of the Supreme Court of Iowa ("Commission"), upon reviewing a joint stipulation of facts from Lesyshen and the Board, found Lesyshen violated the Iowa Code of Professional Responsibility and recommended a five-year suspension. Based on the record before us, an indefinite suspension with no possibility of reinstatement for at least two years is appropriate.

## I. Background

Lesyshen was admitted to practice law in 1982. She served as a prosecutor in the Black Hawk County Attorney's office and then as an assistant city attorney for the City of Waterloo. Following her tenure as assistant city attorney, she entered private practice. She had a general practice, which included trial work. Lesyshen no longer wishes to practice law, and she has found other employment. Lesyshen's license to practice law is currently on inactive status.

This is not the first time Lesyshen has been before this court for disciplinary action. Lesyshen was publicly reprimanded in 1994 for aiding the unauthorized practice of law contrary to DR 3-101(A). Additionally, in October 1998, we imposed a six-month suspension for neglect, forgery, and false notarization. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lesyshen,* 585 N.W.2d 281, 288 (Iowa 1998).

The Board filed this complaint with the Commission for neglect, failure to cooperate with the Board, inadequate withdrawal, and a trust

account violation. Both parties waived the hearing and agreed to submit the matter to the Commission on the basis of the complaint, corresponding exhibits, and a joint stipulation that recommended Lesyshen's license to practice law be suspended for a period of four years. Based on the joint stipulation, the Commission found Lesyshen's conduct violated the disciplinary rules designated in the complaint, and recommended Lesyshen's license be suspended for a period of five years.

## II. Standard of Review

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Attorney Disciplinary Bd. v. Kadenge*, 706 N.W.2d 403, 405 (Iowa 2005); Iowa Ct. R. 35.10(1). The Board has the burden to prove disciplinary violations by a convincing preponderance of the evidence. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Williams*, 675 N.W.2d 530, 531 (Iowa 2004). This burden is "less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004). We give respectful consideration to the Commission's findings and recommendations, but we are not bound by them. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell*, 650 N.W.2d 648, 650 (Iowa 2002) (revoking license even though Commission recommended five-year suspension). We review this matter pursuant to Iowa Court Rule 35.10, and depart from the sanctions recommended by the Commission and the joint stipulation.

## III. Factual Findings

Lesyshen admitted all of the factual claims and ethical violations made against her by the Board. We find convincing evidence to prove the following:

### A. C.S. Matter

Lesyshen was appointed to represent C.S. in an appeal from a juvenile court order terminating C.S.'s parental rights. Leyshen filed a notice of appeal, but she failed to pursue the appeal, resulting in its dismissal pursuant to Iowa Rule of Appellate Procedure 6.19. Lesyshen claims she was unable to contact her client. The joint stipulation is silent as to how Lesyshen was able to initially contact C.S. to sign the notice of appeal, but could not reach her client shortly thereafter. C.S. requested that her appeal be reinstated, and the supreme court did so, and ordered the district court to replace Lesyshen. Lesyshen did not respond to the Board's notices of complaint.

### B. J.T. Matter

Lesyshen represented J.T. in an appeal to the Iowa Supreme Court. Lesyshen filed the notice of appeal, but took no further action. Lesyshen claims she did not follow through with the appeal because her client changed his mind. Eventually the clerk of the supreme court dismissed the appeal for want of prosecution. Pursuant to rule 6.19(3) of the Iowa Rules of Appellate Procedure, the clerk forwarded the notice of default and order of dismissal to the Board.

### C. Robert Wilson Estate Matter

Lesyshen was the attorney for the Estate of Robert Wilson. The estate was opened so that a parcel of real estate could be sold. Lesyshen sold the parcel yet neglected to take steps to close the estate. Three delinquency notices were sent to Lesyshen by the clerk of court. Eventually, the court removed Lesyshen and the executor, and ordered the estate closed. Lesyshen did not respond to two complaint notices from the Board.

**D. Schares Matter**

Lesyshen represented Melvin Schares in a dissolution of marriage action. In May 2002, Lesyshen received a $1200 retainer, but she did not deposit it in her trust account. Lesyshen claims this was an error by her secretary. The stipulation does not indicate what was done with the $1200. In June 2002, Lesyshen took other employment, and stopped working on Schares' case. In August, Schares filed a complaint with the Board. Lesyshen then refunded the unearned portion of the retainer and formally withdrew from the case.

**IV. Ethical Violations**

**A. Neglect**

The record supports the Commission's finding that Lesyshen committed professional neglect on numerous occasions. *See* DR 6-101(A)(3) (providing a lawyer shall not neglect a client's legal matter); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551 (Iowa 2004) (defining professional neglect as "indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client").

In the C.S. and J.T. matters, the appeals were dismissed as a result of Lesyshen's neglect. Even though the C.S. case was ultimately reinstated, the subsequent reinstatement did not cure the prior neglect. *Id.* at 552. Regardless of the client's interest in the case, the onus is on the attorney to comply with the deadlines provided in the appellate rules. *See* Iowa R. App. P. 6.19. Unless the court relieves an attorney of his or her responsibility to the client on appeal, as an officer of the court, the attorney is required to file the appropriate documents and briefs. Anything less may be considered neglect. *See Moorman,* 683 N.W.2d at

552-53 (holding attorney's failure to comply with rules of appellate procedure, as well as subsequent notices to cure the defaults issued by the clerk of court, reveals a blatant pattern of neglect and constitutes a "conscious disregard" for the responsibilities an attorney owes a client and the court).  In regard to the J.T. matter, simply because a client does not want to pursue the case does not relieve the attorney from taking steps necessary to end the matter.  To simply wait for the court to dismiss the case for lack of prosecution is neglect, inappropriate, and unethical.  *See* DR 6-101(A)(3).

Lesyshen also neglected the Robert Wilson Estate matter because she failed to take steps to close the estate even though she received three delinquency notices from the court.  Further, Lesyshen neglected the Schares matter when she simply stopped working on the case after she changed employment.  In considering the nature of the violations in these matters, we note the dilatory handling of client matters is a disservice not only to the client but also to the judicial system.  *Kadenge*, 706 N.W.2d at 408-09.

### B.  Failure to Cooperate with the Board

We have repeatedly emphasized how important it is for an attorney to cooperate with disciplinary authorities when a complaint has been filed against the attorney.  *Id.* at 409.  Lesyshen was initially uncooperative with the Board.  She ignored two notices of complaint in the C.S. matter.  She also ignored two notices from the Board in the Robert Wilson Estate matter.  While the joint stipulation indicates Lesyshen eventually cooperated with the Board, her initial lack of cooperation wasted the Board's valuable time and limited assets.  *Id.* Her lack of cooperation also prejudiced the Board's ability to gather all pertinent facts regarding the complaints.  *Id.*  Such actions clearly violate

DR 1-102(A)(5) ("A lawyer shall not . . . [e]ngage in conduct that is prejudicial to the administration of justice."). *Comm. on Prof'l Ethics & Conduct v. Bromwell*, 389 N.W.2d 854, 857 (Iowa 1986) (holding failure to respond to grievance committee violates the proscription against conduct prejudicial to administration of justice).

### C. Trust Account Violation

Client funds paid to an attorney must be deposited into an interest-bearing trust account, rather than the firm's operating account, until they are earned. *Kadenge*, 706 N.W.2d at 408. Lesyshen's failure to deposit Schares' retainer of $1200 in a trust account violated DR 9-102 (failure to deposit advance for fees in trust account). The fact that Lesyshen paid the money back to Schares after he filed a complaint is not a valid defense or excuse for this ethical violation. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stowers*, 626 N.W.2d 130, 133 (Iowa 2001).

### D. Inadequate Withdrawal

Lesyshen clearly violated DR 2-110 (withdrawal from representation without completing work, to prejudice of client) in the Schares matter. She found other employment, stopped working on Schares' case, and failed to withdraw properly or notify Schares. *See Comm. on Prof'l Ethics & Conduct v. Freed*, 341 N.W.2d 757, 759 (Iowa 1983) (stating neglect of duties to client is like "a surgeon who, without transferring responsibility, drops his scalpel and abandons his patient in the course of an operation"). Lesyshen's conduct also violated DR 7-101(A)(1) (failure to seek objectives of a client), DR 7-101(A)(2) (failure to carry out employment contract with a client), and DR 7-101(A)(3) (prejudice or damage to a client).

## V.  Sanction

In the joint stipulation, Lesyshen agreed to a four-year recommended sanction saying she had found other employment and no longer wished to practice law.  The Commission recommended Lesyshen be suspended for a period of five years given the violations that had occurred.  However, we find, based on the joint stipulation, findings of fact, conclusions of law and recommendation, with its limited explanation of events, a sanction of two years is appropriate.

When we impose sanctions, we only do so on the evidence before us.  We give respectful consideration to the recommendations of the Commission, but are not bound by them.  *Comm. on Prof'l Ethics & Conduct v. Nadler*, 467 N.W.2d 250, 254 (Iowa 1991).  Factors that help guide our determination include "the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue to practice law." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ramey*, 639 N.W.2d 243, 245 (Iowa 2002).  Often, the distinction between the punishment imposed depends upon the existence of multiple instances of neglect, past disciplinary problems, and other companion violations, including uncooperativeness in the disciplinary investigation.  *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sprole*, 596 N.W.2d 64, 66 (Iowa 1999).

Subsequent to Lesyshen's two prior ethical violations, Lesyshen engaged in client neglect, a trust account violation, and inappropriate withdrawal from a client's case, which caused potential harm to her clients.  Further, she initially failed to cooperate with the Board, which is an additional factor in imposing discipline.  *Moorman,* 683 N.W.2d at 553-54.  Based only on the limited facts in the record before us, we find a suspension for a minimum of two years is appropriate.  *See Iowa*

*Supreme Ct. Attorney Disciplinary Bd. v. McCann*, 712 N.W.2d 89, 91 (Iowa 2006) (imposing a two-year suspension for trust account violations and aggravating factors of neglect); *Iowa Supreme Ct. Attorney Disciplinary Bd. v. Sotak*, 706 N.W.2d 385, 386 (Iowa 2005) (imposing an indefinite suspension of two years where conduct involved professional neglect, misrepresentations, failure to notify clients of attorney's transfer to new law firm, and failure to promptly give settlement check to client); *Iowa Supreme Ct. Attorney Disciplinary Bd. v. Maxwell*, 705 N.W.2d 477, 478 (Iowa 2005) (imposing a one-year suspension for violations stemming from neglect and inattention in the representation of three clients, where attorney had prior ethical violations).

## VI. Conclusion

Lesyshen is suspended indefinitely from the practice of law with no possibility of reinstatement for at least two years. This suspension shall apply to all facets of the practice of law as provided in Iowa Court Rule 35.12(3) and requires notification of clients as outlined in Iowa Court Rule 35.21. Costs are taxed to Lesyshen pursuant to Iowa Court Rule 35.25(1).

**LICENSE SUSPENDED.**